## Sessler Estate

*Stanley B. Cooper, Waters, Fleer, Cooper & Gallagher, Paul Maloney,* and *Pepper, Hamilton & Scheetz,* for accountants.

*Maxwell Strawbridge, Morris Goldman, Victor J. Roberts,* and *High, Swartz, Roberts & Seidel,* for claimants.

TAXIS, P. J., March 7, 1969.—The account shows a principal balance for distribution of $402,321.51, composed of bonds as set forth on pages 2 and 3 thereof $401,613.42, and cash. There is an income balance for distribution of $9,078.23, composed of cash.

The transfer inheritance tax has been paid, but should any portion pass to collateral heirs additional tax will become due.

The reason or purpose for the filing of the account is the death of Charlotte J. Bleyden on November 1, 1967. Mrs. Bleyden was one of the three children of decedent, and is the second of the three to die. The

trust continues as will be discussed in detail below, but because Mrs. Bleyden was predeceased by her only child, Carolyn, who died without issue in 1958, a portion of principal is now distributable. A controversy has arisen concerning this distribution, and has been submitted to the court for determination herein. Certain facts have been stipulated by counsel, and the stipulation is incorporated by reference in this adjudication.

Decedent died on September 4, 1935, and created this trust by his will. Insofar as now relevant, the will divided testator's estate into three shares subsequent to the death of his widow, which occurred in 1950. There is one share attributable to each of the testator's three children. One child, J. Leonard Sessler, died in 1951; the third child, Margaret Sessler Goldsmith, remains alive. At the death of J. Leonard Sessler, his share of the principal was awarded to his only child, Patricia Weigel, who subsequently executed the assignment which gives rise to the present dispute. Said assignment was to Arthur Goldsmith, husband of Margaret Sessler Goldsmith.

Under the terms of the trust, the death of Mrs. Bleyden without issue requires the division of her share of principal, now one-half of the corpus, into two parts. One part becomes distributable to Patricia Weigel; the other remains in trust for the benefit of Margaret Sessler Goldsmith.

The issue presently before us concerns the share of Patricia Weigel. This share is claimed by Arthur Goldsmith on the strength of his assignment. Therefore, a review of the facts leading to the execution of this assignment is in order.

Decedent was the owner of a book business located in Philadelphia and known by his name, Charles Sessler. The business was operated subsequent to his death with varying degrees of success. At the confirmation

of the second account, Patricia Weigel became entitled to a one-third distributive share of the trust assets, including a one-third interest in the book business. The record at that time indicates that the value of a one-third interest in the book business was approximately $54,000, and the value of a full one-third share was about $130,000. Distribution of the assets, except for the business interest, was made, and the business remained intact and continued to operate.

On December 2, 1954, Patricia Weigel and Arthur Goldsmith entered into an agreement under seal providing, in part, as follows:

"Patricia is the owner and holder of a one-third interest in the business and assets known as and trading under the name of Charles Sessler, . . .

"Arthur is desirous of purchasing Patricia's interest therein.

"NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties intending to be legally bound hereby, agree as follows:

"1. Patricia agrees to assign, transfer and deliver unto Arthur all of her right, title and interest in and to a one-third interest in the business known as Charles Sessler, located in the City of Philadelphia, including therein her one-third share of all of the assets subject to existing liabilities, . . ."

The stated consideration for this agreement was $36,000, plus an agreed sum representing Patricia Weigel's share of the 1954 profits of the business.

Later in the same day, Patricia Weigel executed the following assignment in the course of settlement under the terms of the above agreement:

"WHEREAS, the Orphans' Court of Montgomery County, Pennsylvania, on the 26th day of June, A.D. 1952, entered an adjudication in the Estate of Charles Sessler, whereby it was adjudicated that Patricia

Weigel was vested with a one-third interest in said estate; and

"WHEREAS, as a result thereof, certain distributions were made to her, but there remain certain assets in the business conducted under the name of Charles Sessler which have not been distributed to her; and

"WHEREAS, said Patricia Weigel is desirous of disposing of the same;

"NOW, THEREFORE, . . . I, PATRICIA WEIGEL, have assigned, transferred and set over and by these presents do assign, transfer and set over all and every of my interest in the Estate of Charles Sessler, deceased, unto ARTHUR GOLDSMITH, . . ."

These transactions occurred in the course of arrangements between Arthur Goldsmith and the trustees for purchase of the book business by Mr. Goldsmith. An agreement of sale to this effect was entered into, and on February 1, 1955, this court was petitioned to approve the sale. As a result, the following decree was entered:

". . . the award heretofore made by the adjudication upon the Trustees' Second Account awarding an outgoing share of one-third to Patricia Weigle (Weigel) is modified so that any remaining unpaid portion of such award shall now be paid to Arthur Goldsmith . . ."

Counsel for Patricia Weigel contends that the agreement and the assignment must be construed together, not separately, and that so construed they clearly reveal that the subject matter of the transacion was Mrs. Weigel's interest in the book business and nothing more. As a matter of common sense construction, this position must prevail. Where the issue is the meaning or interpretation to be given to two related writings, we are required to consider both of them as well as other connected events to determine

the proper result. In Howell's Estate, 273 Pa. 50, it was held that an agreement of sale was admissible to explain and clarify a subsequent assignment based on it, and that where the assignment by itself might have been construed to cover all of assignor's interest in the estate, the agreement of sale was admissible to prove that only a certain portion of the estate was the subject of the assignment. In Hosfeld Estate, 412 Pa. 156, 159, the court stated that the intention of the parties ". . . must be ascertained not only from the actual words contained in the agreement or bill of sale but all the surrounding circumstances." It was there held that an assignment of a business conveying "all book accounts and accounts receivable, outstanding contracts, and all assets and property of any kind or nature whatsoever . . ." did not include a savings account carried in the name of the business but not otherwise connected thereto. The court also said, at page 160, quoting from the opinion of the lower court, "We are the more persuaded of the correctness of this interpretation when the disparity between the consideration for the contract and the amount of the bank deposit are recalled." The same observation is applicable as well to the dispute here before us.

In the present case, the assignment in one place refers to ". . . all and every of my interest in the Estate of Charles Sessler . . ." Prior to this, however, the assignment itself made specific reference to undistributed ". . . assets in the business conducted under the name of Charles Sessler . . . ," and then recites that Patricia Weigel desires to dispose of *the same*. (Italics supplied.) The agreement of sale refers only to the undistributed interest in the business, and, at the time the assignment was executed, the only *undistributed* assets to which Patricia Weigel was entitled were those related to or used in the book business. Construing these writings according to the facts as they existed when they were executed, it is evident

that they relate exclusively to the interest in the estate owned by Patricia Weigel at that time, which was synonymous with her interest in the book business.

As a possible explanation of what occurred, all that counsel for Arthur Goldsmith offers in his brief is, "What motivated Patricia Weigel to make an assignment, not of her interest in a business, but of her interest in the decedent's estate, is immaterial and irrelevant." This would hardly sustain an *unambiguous* assignment, in the light of the plainly worded agreement of sale; it is clearly no answer here, where the assignment itself, by its own wording, is unclear and requires explanation. Moreover, at the time of these transactions Charlotte J. Bleyden was living and had a living daughter, which meant that Patricia Weigel had only a contingent interest in the balance of the estate. There was no ascertained or vested interest to be the subject of an assignment. We conclude, therefore, that the claim of Arthur Goldsmith is without substance and must be refused.

This disposition of the matter makes it unnecessary to refer to the spendthrift clause in the will which very clearly states that neither principal nor income shall be subject to assignment by legatees or beneficiaries. This provision casts grave doubt on the enforceability of the present assignment, to the extent that it is unperformed and opposed by the assignor. In this connection, counsel for Arthur Goldsmith contends that the aforementioned decree of February 1, 1955, being unexcepted to, unappealed, and more than five years old, is binding upon Patricia Weigel. It is evident, however, that the decree was entered routinely and without opposition, and can have no effect beyond the meaning of the writings on which it was based.

\* \* \*

And now, March 7, 1969, this adjudication is confirmed nisi.